Rockingham, }
Oct. 6, 1914. }

## STATE *v.* DENNIS D. BURKE & *a.*

In an action upon a liquor dealer's bond, the state is entitled to a verdict upon proof that any provision of the license act was violated at the place designated in the license.

It is no defence to an action upon a liquor dealer's bond that the sureties were deceived by a false statement made by the principal in his application for a license.

A liquor license is not rendered void *ab initio* by a fraudulent statement in the application, but remains in force until revoked by the board of license commissioners.

DEBT, upon a liquor licensee's bond. Trial by the court and verdict for the state, to which the defendants excepted. Transferred from the January term, 1914, of the superior court by *Sawyer*, J., on an agreed statement of facts.

Burke, the principal, stated in his application for a liquor license that he was the sole owner of the business. It was in fact owned by one Morrissey, who by Burke's permission carried it on under color of the latter's license for over nine months after the license was issued. The bond was conditioned upon obedience to the law "to the satisfaction of the state board of license commissioners." Neither the state nor the surety on the bond knew that Burke was not the owner of the business. Upon a complaint charging Burke with the false statement in the application, the license commissioners, after notice and hearing, revoked the license and declared the bond forfeited.

*James P. Tuttle*, attorney-general, and *Ernest L. Guptill*, solicitor, for the state.

*Kelley & Hatch*, for the American Fidelity Co.

PEASLEE, J. It is admitted in the agreed case that Burke broke the condition of the bond. He permitted one not a licensee to illegally sell liquor upon the licensed premises during the period covered by the bond. *State* v. *Cote*, 74 N. H. 122. This being so, there is no occasion to inquire whether the state board of license commissioners erred in declaring the bond forfeited for another

alleged breach. The suit upon the bond is not dependent upon the action of the commissioners. *State* v. *Corron*, 73 N. H. 434, 446. If the stipulation in this bond that its condition shall be performed to the satisfaction of the board were construed so as to modify the general rule, and to amount to an agreement that the board were to be the sole judges of the existence of a default, it would not alter the result. The case would then stand like a suit on a probate bond wherein the probate court has exclusive jurisdiction to determine the amount of the default. In such a case, suit for an admitted default may be brought without resort to the probate court. *Smith*, C. J., in *Rogers* v. *Wendell*, Rockingham, November term, 1815, quoted in *Judge of Probate* v. *Lane*, 51 N. H. 342, 347. The fact which a judgment by the board would establish being conceded to exist, there is no occasion to inquire what evidence would or would not be admissible to prove it if denied.

The deceit practiced by Burke upon his sureties is no defence for them against the innocent taker of the bond. *State* v. *Salvail*, *ante*, 351. *Lyman* v. *Schermerhorn*, 167 N. Y. 113, is relied upon as giving countenance to the idea that this bond was voidable by the surety from its inception. But that case is not wholly in point in the present one. There the default relied upon was that sales had been made by the licensee, who had been convicted of a felony and was for that reason disqualified to hold a license. The sales complained of were lawful if he was in fact and law a licensee. Apparently, there had been no proceedings to revoke the license or to establish its invalidity in any way. The decision was that the state could not, in its suit against the surety, say first that the license was validly issued, so as to give life to the bond, and also claim that it was invalid from the beginning because of the applicant's disability. If it was invalid there was no bond, and if it was valid the sales were legal.

In the present instance the license was revoked and cancelled because of a fraudulent statement in the application. The applicant was not a person disqualified to hold a license. If the state could have elected to treat the whole transaction as void from the beginning, it did not do so, but proceeded under the statute to extinguish future rights under the license. The statute makes no distinction between false statements in the application and violations of law in the exercise of the privileges subsequently granted. In either case the license is to be revoked and cancelled. Laws 1903, c. 95, s. 14. There is nowhere a suggestion of the theory now

advanced, that in one case the license is made void *ab initio*, while in the other it is valid until revoked.    The provision for a revocation is common to both, and as to both it means that the license is in force until revoked.

In *State* v. *English*, 74 N. H. 328, defence to a suit upon the bond was made upon the ground that the licensee was not in fact the owner of the premises, but procured the license for the benefit of the real owner, who was not qualified to hold a license.    It is there said that such conduct did not render the license void, that the purpose to so use it did not relieve English of any of his duties and obligations as a licensee, and that the execution of such purpose might be deemed to constitute a violation of the license.    While this case is not in all respects identical with the one now under consideration, its whole tenor is to the effect that Burke's license was valid and that its revocation merely terminated rights under it.

*Exception overruled.*

All concurred.